The next case on our call of the docket this afternoon today, Tuesday, November 16, 2010, is case number 109711, First American Bank Corporation v. Gwen Henry, agenda number 14. Counsel? Mr. Chief Justice. May it please the Court, my name is James Rooney. I'm here on behalf of the plaintiff's appellants in this case who are taxpayers from DuPage County, Illinois. They paid their taxes under protest and sought on various reasons to get some of it back from the taxing districts as permitted by Section 23 of the Property Tax Code. This particular appeal involves the construction of the meaning of Section 7-171B1 of the Pension Code, a portion of the Illinois Municipal Retirement Fund Act. In Section 171, the A part of it talks about the appropriation and how it is to be made. Then in Section 7-171B1, the following language appears. A municipality other than the school district may levy a tax which shall not exceed the amount appropriated for municipal contributions. The trial court on a legal issue, there is really no question about what the facts are in this case, entered summary judgment in favor of the district and against the objectors. The appellate court affirmed both the district and the appellate court have asserted that there is an interaction between two statutes here, the Downstate Forest Preserve District Act and the Illinois Municipal Retirement Fund portion of the Pension Code. We believe there is no interaction at all between the Pension Code and the Downstate Forest Preserve District Act. What's wrong with that, Mr. Bruni? Doesn't 171E contain a provision permitting a municipality to refer to other statutes in establishing procedures? Yes, it does. For the levying and collection of taxes. No, this court for 100 years has construed that type of language to apply only to the collection process but not to the levy process. But that E does say shall be levied and collected in like manner with the general taxes of the municipality, right? That is what it says, but this court has said that you should read a comma after the levied on a last antecedent theory saying that the collection process, the extension, the collection and payment process of the, that would be the, at that time the Revenue Act of 1939 but now the Property Tax Code, is engrafted on a statute that includes that type of language, whether it be the IMRF provisions or some other provision concerning the levy and collection of taxes. So under that interpretation then that's your argument that 13.1 and 13.3 of the Forest Preserve Act then would not apply? There's more than that though. There is a provision in Section 13.1 which controls the levy under the Downstate Forest Preserve District Act which says that this particular provisions do not apply to bonds or to levies for annuity and benefits which is exactly what the, or pensions, which is exactly what the IMRF statute's all about. So there's no authority in the Downstate Forest Preserve District Act itself to levy for pensions. You must find it somewhere else which is the pension code and that's where the IMRF provision of the statute comes into effect. The main case concerning the scope of the Illinois Municipal Retirement Fund Act is a case called the KRAPF case, K-R-A-P-F, decided in 1958, over 50 years ago. And in that case the school district, it was a school district case and it involved the scaling provisions of the prior extension limitations of the Revenue Act of 1939. But the holdings of the case are what are important in the KRAPF case. First of all, it held that the IMRF statute even 50 years ago was a complete statutory enactment. And being a complete statutory enactment that covers several different types of taxing districts which the IMRF statute still does today, that when you take advantage, whether you're a school district or any other type of district of that type of statute, you're governed by the provisions of that type of statute. And that governs the authority and the procedure. Because as the court said in KRAPF, when you have a statute applicable to all types of taxing districts, if you let one pick and choose whether it will be governed by the Illinois Municipal Retirement Fund Act or by its own levy provisions, you end up giving a preference to a particular type of taxing district and that's not allowed. KRAPF is virtually determined that only the pension code is applicable in this case. And even the appellate court found that the pension code is what they construed, not the Downstate Forest Preserve District Act. It's interesting because this particular type of language is similar to a decision made in 1947 by this court involving the city of Chicago's authority to levy under the Illinois Municipal Retirement Fund. And in that case, this court held that similar language forced the conclusion that there must be an appropriation before the levy is made. When the new provisions that were put into effect in the 1960s involving the appropriation ordinance and the levy ordinance for Illinois Municipal Retirement Fund and this restriction that you can't levy more than you appropriated was put into the statute, obviously the city of Chicago case had been in effect for 20 years and I think that this type of language had received a fairly settled meaning. When you say you can't levy more than you've appropriated, you can't levy more than you've appropriated. It means that you must appropriate and tell people how the calculation was made as to how much you're going to need for the levy. In some ways, this case flows from a case decided by this court in 1999, the ATI Carriage House case which we cited in our brief. In that case, the taxpayers made an argument that the levy was actually for some out into the future tax year. This court rejected that saying that for school districts, the levy should be for the fiscal year that you're in. That's what we're trying to get across in this particular case too that for the IMRF statute, the levy should be for the fiscal year that you're in. If you go to the Downstate Forest Preserve District Act, something else occurs. You can levy before you even appropriate which is a very strange provision. It's the only one that I can find. But I don't think the Downstate Forest Preserve District Act applies at all and I don't think you have to reach any conclusions or say anything about the Downstate Forest Preserve District Act. You can decide this merely on an interpretation of the Illinois Municipal Retirement Fund provision and it's a restriction that you must levy no more than the amount appropriated. Is there some practical problem that arises where the Forest Preserve District can levy before it appropriates and then however your argument is, they can levy before they appropriate for the general revenues but for their contributions to the fund, they have to appropriate before they levy. Is there some practical problem with the two of those working together? Yes. There are two practical problems, both of which tie into the main reason for having these types of restrictions. The appellate court found that the purpose of these restrictions, and it's the one thing they got right, they found that the purpose of these restrictions was to prevent a district from raising money faster than is needed. In this particular instance, the district is raising money faster than it needs because it's levying a year before the funds will actually be needed. The second reason that I think underlies all this, but it's sort of silent, is that levies for pensions are levies without a maximum rate limitation. You can levy as much as you can get. There is no top limit. The limit should be when you make your appropriation and you decide what type of money you have, what type of money will become available and what type of levy you need, that should be determinative of what your levy is in this particular instance so that you don't raise money faster from the taxpayers than is necessary. We've always been a necessity state in Illinois, and there are no real provisions throughout the statutes except where specifically put into the statute that say that a district can accumulate funds in excess of what it needs until the next levy comes in. Does that answer your question or not answer the question? Not quite. Okay. Are there timing problems? There are no timing problems involved in this particular situation because the Illinois Municipal Retirement Fund Board sends a notice, and the notices are in the record in this particular case, sends a notice of before the beginning of any calendar year, first of all, in April, before the year starts, they send a preliminary notice. Then in November, which in April is about when you'd be making your appropriation, then about the time you're going to be making your levy, they send out a final notice of what your rate will be for the next upcoming year. So there's no timing. You know what you're going to need to give to the Illinois Municipal Retirement Fund. The question is what do you have on hand and how big will the levy need to be to be able to meet that commitment that the Illinois Municipal Retirement Fund tells you about before even the year starts, the calendar year starts. So there are no timing problems here. The only timing problem is the fact that this district, in its general levy procedure, must levy six or eight months prior to the beginning of its fiscal year before it's even calculated what types of money are going to be necessary to get it through that fiscal year, which is similar to what the taxpayer said was happening in the ATI Carriage House case. But when this court cured that problem, it says, well, the levy is for the year you're in. It's not for the year out into the future. Mr. Rooney, if you've answered Justice Tice's question, in order to you have to levy and then it's extended by the, I forget now, the clerk or the treasurer, and then it's collected in the following year. It is collected in the following year. So isn't it a necessity to have to levy in advance in order to have the money available when it's collected and turned over to the governing body? We're not sure if that's the timing problem you're complaining about. No, I'm not complaining about a timing problem. I'm complaining about a restriction. I was asked about a timing problem in terms of the flow of the money coming in. But I thought in response to your question, you had said it was a problem that they were levying in advance of what they even needed. Right. But I guess my point is, Mr. Rooney, let me just make sure you understand my question. Okay. My point is, if that's the scenario you're talking about, isn't it a necessity to levy in advance so that you have the money collected and available to pay at the time it's appropriate? No, because this is the answer, but let me explain. This course, always since the 1940s, has said that you can become what is called a cash basis tax payer or taxing body. A cash basis taxing body is a taxing body that at the end of the year has a sufficient surplus on hand to get it to the first collections of the next year. And, therefore, you can run surpluses. And surpluses do not matter until you get out to like a two-times multiplier, and at that point you can skip a year. What this particular statute is designed to do is to bring you closer to the timing provisions for the collection. You can, and the IMRF board says you can, that also those regulations are part of the record, says that you can levy an amount sufficient to get you to the next collection in terms of a surplus. And you should be able to do that. There's nothing wrong with that. What this court has always said is that if you have surpluses, the surpluses should be self-correcting because that money should be taken into account at the next levy that you make. And if you do that, you should not be running over two times. What this statute says is we're going to bring you down a little lower because you can't levy more than you appropriated, and in your appropriation you can appropriate for the amount to get out there to where you think is necessary for the next levy to come in. So there is always a timing problem in Illinois because we're a year behind. This court has always said if you want to be a district, you don't have to go to tax anticipation warrants. You can collect a certain amount of funds so that you can get to the next taxing collection. I don't know whether that answers the question, too. It seems with that rationale, if you start at year one and you appropriate $100,000 for your IMRF and you have no balance on hand, you have to levy $200,000 so that you will be getting ahead and having a cash balance. And I think the taxpayers would object that you're levying more than your appropriation ordinance. As Chief Justice Filbright indicated, with our system, when they levy in the year 2006 or the appropriation for 2006, that doesn't get extended until 2007 and collected in 2007. And you're saying carry a balance rather than levy before the beginning of the year as the Downstate Forest Preserve District Act would allow them to do. What I think I said was included in the appropriation ordinance. And then when you levy, you are levying a sufficient amount to get you out past the float until the next money comes in. So you have to levy more than you appropriate. No, you appropriate more to get you through the float, and then you levy the amount that you've appropriated. So the appropriation is a fiction. No, the appropriation is a reality based on past performance. If you're appropriating more than you're going to need to fund the IMRF the initial year in order to get you past the float, you're clearly not going to spend that amount. You're going to spend what is necessary to fund the IMRF. That is correct. And that is, as a practical matter, this court has always said that you can operate on a cash basis and not sell the tax anticipation warrants which would be necessary under your example. And there's nothing wrong with that. Because let me explain. When you say that you levy the 100% and you're going to spend the 100% and the money isn't going to come in for a while, that would mean that you would have to sell tax anticipation warrants to get yourself through. That went out in the 40s of the 20th century. But in order to get yourself through, you have to build up this balance, so you're levying more than you're actually going to spend.  And that has been a problem with this court and has not been since the 1940s. But this court in those cases was not dealing with this type of limitation imposed by the Illinois Municipal Retirement Fund Act itself. My time is up. Thank you. Mr. Rooney. Counsel. May it please the Court. I'm Paul Mitchell representing the Forest Preserve District of DuPage County. I wanted to address the things that were brought up just this afternoon, but first I just wanted to emphasize that previously, prior to 1988, the Forest Preserve Districts had to appropriate before they levied. The statute was amended in 1988 because previously you had to do your tax levy and your appropriation prior to the first Monday in November. That was amended to move it back so that the appropriation had to be done before or during the first quarter. The district's fiscal year starts July 1st, so now you could theoretically approve your appropriation ordinance as late as September 30th, which would be really possibly 11 months prior to how the previous statute provided. The public body that petitioned the legislature in 1988 was the APOE, the Forest Preserve District of DuPage County, and I've been around so long, I was involved at that time. And the problem was, I don't know what the intent of the legislature was when they approved the amendments, but our intent in going to the legislature was it was very difficult to appropriate eight months prior to the beginning of the fiscal year. In other words, we really had to appropriate, since it had to precede the levy, we had to appropriate in October for a fiscal year that started eight months later in July. And so what this statute did was allow us to move back our appropriation. And to my knowledge, there's been prior Supreme Court cases going back to the 40s that have said there's nothing magic about appropriating prior to your, or levying prior to your tax, your appropriation. It has to do with what underlying statute each governmental body has, and it's up to the legislature to determine what that statute is. As far as now, if I could respond to a few things that were made by Mr. Rooney. First of all, he mentioned the Kraft case and said that that had language in a 1958 case, that that was a complete statutory enactment. And that is true. Nobody's questioning that you have to go completely to the pension code to get authority to levy for IMRF purposes. However, in that same case, they refer to the fact that you have to go to the pension code for authority. They mention it in the same paragraph. We aren't questioning that the only authority for a pension levy is in the pension code. What we're saying is you have to go outside the pension code to get some timing and procedure on how you handle your appropriations and your levies. The IMRF portion of the pension code in the compiled statute is 50 pages of small print. Nowhere does it have a date when you have to levy. There's no procedure. There's no timing procedure at all. And like the appellate court said in the decision, they read the pension code as merely imposing a limitation and not some timing sequence. And if I could... Can you help me with that? In fact, they do say that. So how do we interpret the statute that requires that the levy be limited in amount by the appropriation, by the amount of the appropriation, correct? Yes. So how is that determination made when your argument is the appropriation comes first? Well, in this case, and I'm not doubting that that is a limitation. So let's just say that we violated the statute. So in the fall, we levied $100,000 for IMRF purposes. And then in the next summer, we only appropriated $90,000. We would be violating that very requirement that the amount to levy can't exceed the amount appropriated. Well, now the tax objector can come in. They file their tax objections in November right now. So they would clearly be able to object to that tax you violated. It's not like it's too late. You can file your objection way after we did our levy and our appropriation. It's a limitation. And if I could, you mentioned how's the timing sequence. I think that if you listen to the construction of the objector, you would have an absurd result because we would have to apparently appropriate for IMRF purposes in the fall. Then we would do our tax levy in the fall for all public purposes. And then in the next summer, we would appropriate for all public purposes except the IMRF purposes that we previously appropriated in the fall. Now, it's hard to believe that that was the legislative intent, that you can levy before you appropriate except for IMRF purposes. And the amendment to the Downstate Forest Preserve Act didn't say, oh, you can move it back to the first quarter except for IMRF purposes. It said you can move it back clearly for everything. The council mentioned the ATI carriage case. You know, that was a complicated case, but it was a 1999 case involving a school district where actually that school district was doing just what the Forest Preserve is doing now. They had their levy in the fall, and then they had their appropriation, in this case in May, for the same thing, for a fiscal year that began in July 1st. And this court said that that's a cash basis public body, and there's nothing wrong with that. And, in fact, they had levied prior to their appropriation. And this court saw no problem with that. Also, I think I would like to talk about the wording in the pension code. Section 7-171E, I think was brought up, has a provision that the taxes will be levied and collected in like manner with the other taxes of the municipality. Council mentioned the Kelly case, which is a 1941 case. However, the facts were different there. They did say that we were going to interpret that language to put a comma after levy. And, by the way, the Kelly case that I could never find cited since 1941 in any case, but it's there. I guess you can say it's on the books. What they did is they, without giving much reason, they put a comma after levied. So then the phrase would read, the taxes shall be levied, comma, and collected in like manner with the other real estate taxes. That would clearly mean that the in like manner would only modify the collected and not the levy. But there's a big difference in our statute. Our statute actually has a comma. And when I say our statute, I mean the pension code. It has a comma after in like manner. So unlike Kelly, that statute says that the taxes shall be levied and collected in like manner, comma, with the other taxes of the municipality. What that means to me is in like manner clearly modifies both levied and collected. So I think there is a difference. And when you're looking at the statutory construction, you can't just look at Section 7-171B1 and look at this appropriated language. You have to look at other portions of the statute. And in the same statute, Section E says it will be levied and appropriated in like manner. What that means is you have to go outside the pension code and go to the Downstate Forest Preserve Act to determine the procedure. Let me look at my notes. That's really all the comments. I had some others, but I wanted to address your concerns. And I'm here to answer questions. But I think it's a complicated case, but in a way it's certainly simple. We have the right to levy prior to appropriation, and it shouldn't be any different for the IMRF levies as well. That's all I have. May I ask you another question? Sure. In this case, the district levied $980,000. Correct. And, however, the contribution that was required and that was in fact later appropriated was $1.1 million, correct? Yes. So are you telling us that the difference was made up by a surplus? It can be made up by a surplus. And you also, and I can't say that I have this memorized, this appropriation, but I know from representing the Forest Preserve District, you can also have non-tax generated revenue. In other words, we have appropriations that are more than the tax levy because we have user fees or some non-tax revenue that will be used to pay the rest of that appropriation. I guess my question is in difficult times like we have today, is the district confident that it will always have that kind of surplus to make up the difference if it levies first and appropriates later? Well, it can't. It can't. It's stuck with its levy. It has to, it can't levy any more than the appropriation. So once they do the tax levy, they do have to live with that amount. I guess the suggestion that your point has is if appropriation came first, you'd know what you owe and then you'd levy and you'd have that amount. And there would be surety in the amount that you'd have available to make the contribution to the fund. Well, a couple of things. You know, it's clear that the district can appropriate before or levy before they appropriate. But also, Mr. Rooney, for instance, representing tax objectors, we have fund balance cases where if you allow a fund, for instance, to get too high so you're over the 2.0 factor, you will lose a tax objection because you have too much money in that fund. So every year it's self-correcting because even if you somehow had a little too much, if you start going over the limits, you're going to be subject to the other fund balance type exceptions that Mr. Rooney is very good at filing tax objections about. So it's almost self-correcting. If you got ahead one year, somehow you may face a tax objection, but on top of it you would have those excess funds the next year and it would be self-correcting. We're requesting that the court affirm the trial court and the appellate court decision. Thank you. Thank you, Mr. Mitchell. I don't draft the statutes. I just try and make sense out of them, and so does Mr. Mitchell, who I respect and like. So do we. And sometimes you've got to scratch your head. When I listened to the explanation of the statutory change, the change of downstate forest reserve districts from an entity that would appropriate first and levy second to an entity which will levy first and appropriate second, the timing structure that Mr. Mitchell gave you is exactly what the schools use now. The year starts January 1st. They appropriate on or before the first quarter of their fiscal year, and they levy. And the question in the ATI case is which year is that levy for, and this court held that that levy is for the fiscal year they're already in and that anything else would be surplus to get them out, although that's not particularly made clear in the case, but I think that's involved in the case. I think we've gotten a little far afield from the language of the statute, which I think is plain, and towards the end of his argument I think I even heard Mr. Mitchell say that there is a limitation that you can't levy more than you appropriate. In this particular case, all the appropriations that were made during the fiscal year that this levy was made had been taken care of by the prior levy ordinance. This levy ordinance adopted in 1999, November, December of 1999, was for the year out into the future, and I don't think that's appropriate given the statute, and we would ask that the appellate court be reversed and the case be remanded for further proceedings to the trial court. Thank you very much for your time. Thank you, Mr. Rooney. Case number 109711, First American Bank Corporation, et al. versus Glen Henry and the Forest Preserve District of DuPage County, agenda number 14.